At a Court of Oyer and Terminer held at this term, John R. Hamilton was indicted and tried for the murder of Sarah Hamilton, *Page 102 
his wife, in the first degree. The principal evidence of the State was that of Owen Tomlinson who testified that on Thursday night about the middle of August preceding, he went to the prisoner's house in Smyrna, and learned from his wife that he was away in Philadelphia, and that she appeared to be uneasy about him. Was there when he returned that night, and while the prisoner was showing him some presents which he had received in Philadelphia, his wife said to him "things can be presented to you, but nothing is ever presented to me," to which he replied "you do not know what I have for you." "She then said he had been off to the city and left her all by herself for a week, and spending his money in places where he ought not to go, and asked him about a certain woman there, and if he had given her five dollars. He then cursed her and threatened to kick her out of doors and struck her a blow on the left side of her head, when she went out of the room and sat down in the kitchen, out the prisoner and himself remained for some time afterwards in the front room and took several drinks of whiskey together in the mean while, and that during the intervals he passed several times from that room to the kitchen to repeat the blow, and that he struck her in all seven or eight blows with his clinched fist on the left side of her head; that she held her left hand to the side of her head to protect it, and that he hit very hard several times with his fist, and that there was a lump swelled up on the back of that hand as large as a hen's egg. He then said damn her, she was drunk, and ordered her up stairs to bed, which order she obeyed. He thought she had been hurt but not dangerously. While cursing her, he threatened to kill her, and told her that she ought to have been dead long ago.
The wife was apparently as well as usual during the three succeeding days, but on Monday morning her condition required the attendance of a physician who testified that she complained of a pain in the left side of her head, and he saw the contusion on the back of her left hand, *Page 103 
and examined for, but found none on the left side of her head. She had a convulsion, however, before he left, and died on the following Wednesday morning, and a postmortem examination made by him and two other physicians disclosed the following facts according to their evidence. The first thing they observed was a contusion on the back part of her left hand, and on the left side of her head in the region of the temple they found a good deal of congested blood between the scalp and the skull, and on opening the skull they also found a good deal of congested blood on the left side of it in the same region. They found in the larger extremity of the stomach indications of chronic inflammation, such as some times occur in cases of dyspepsia, and also some indications in the stomach of habits of intemperance. Congestion of the brain produced by excessive indulgence in intoxicating liquors would be general, but in this case it was partial and local, and the greatest or principal point of the congestion corresponded with the external bruise. And for these reasons they were of opinion that her death was caused by congestion and compression of the brain produced by external force or violence.
that if they were satisfied beyond a reasonable doubt by the evidence in the case that the deceased came to her death by congestion and compression of the brain produced by blows inflicted by the prisoner with his fist on the left side of her head, it would be for them to consider and determine what crime, or description of felonious homicide he was guilty of under our statutes and the manner and form in which he was indicted. Those statutes were not intended or understood to make any change in the general criterion and characteristic of the crime of murder or the crime of manslaughter as they existed at common law, and in this state before they were enacted, except to divide the former into two separate and distinct degrees, and to modify and mitigate the common law *Page 104 
penalty of it in the second and subordinate degree, as established by the statute. If the jury were satisfied from the evidence that she came to her death as he had before stated, of what crime he was guilty in the eye of the law, would depend on the facts and circumstances proved in the case. Neither the insult and reproach of his wife, consisting of a gross charge of infidelity, whether true or false, and however offensive and provoking they might have been, nor the intoxication with which he charged her in turn, if such was then her condition, could justify or excuse the commission of such a violent assault and battery upon her by him, as had been proved by one unimpeached witness in the case, although it was committed and all the blows inflicted and several times renewed and repeated by him, were dealt with his clinched fist simply in the manner stated by him. Nor could such aggravation or provocation on her part have the effect in law to negative the implication of malice aforethought with which it was committed on his part, and to mitigate and reduce the killing to the crime of manslaughter under the facts and circumstances proved in the case.
Manslaughter in contemplation of law can only occur in an assault and battery when both are combatants in it, or have been, and one of them in the heat of blood or transport of passion produced by it, deals the other a fatal blow, or suddenly seizes without deliberation or premeditation, and before he has had time to cool, a deadly weapon or dangerous instrument and inflicts a mortal wound with it upon him; but not when the other, and particularly, when a woman and the wife of the assailant, is but the passive and unresisting recipient and victim of the blows from the other party; for under such circumstances the law out of its tender regard for the common infirmity of our nature, negatives, even the implication of malice and presumes that the act was committed without any malice aforethought whatever.
But to constitute the crime of murder of the first degree under our statute, and to convict the prisoner of *Page 105 
that offense, the greatest known to it, the jury must be further satisfied beyond a reasonable doubt from the evidence that the deceased was killed with express malice aforethought by the prisoner. And to find that it was done with this kind or degree of malice aforethought, that is to say, with express malice aforethought, according to the legal definition of it, they must also be in like manner satisfied that he did it with a sedate deliberate mind and formed design, which formed design according to the rule of law on the subject, is evidenced by external circumstances showing the inward intention, such as lying in wait, antecedent menaces, former grudges, and concerted schemes to do the party some bodily harm. These are the external indications or the evidence laid down at the common law which clearly show the inward intention with which the act or acts were done, and that when they, or any of them show to the satisfaction of the jury beyond a reasonable doubt that the killing was done with a sedate deliberate mind and formed design, it would in such case be with express malice aforethought at common law, and murder of the first degree under our statute. The evidence that the killing was done with a sedate deliberate mind and formed design, should in all cases, however, be clear and entirely satisfactory to show and establish the fact that it was committed with express malice aforethought in contemplation of law.
But, if the jury were satisfied from the evidence that during the time the prisoner was drinking whisky with the witness, Owen Tomlinson, in the front room, he several times passed from it into the kitchen where his wife then was, and at several different times inflicted violent and repeated blows with his clinched fist on the left side of her head and her left hand with which she endeavored to cover and protect it, as stated by the witness, and that those blows produced a congestion and compression of the brain of which she died in a few days afterwards, it would indicate such cruelty and deliberation on his part under such circumstances as would, at least, imply malice *Page 106 
aforethought in contemplation of law, and would constitute the killing of her in that manner and under such circumstances, the crime of murder with implied malice aforethought, and of murder of the second degree under our statute. For this constitutes the characteristic element or ingredient of murder of the second degree under it.
The jury must, however, be satisfied from the evidence beyond a reasonable doubt, that the death of his wife was caused by the repeated blows inflicted upon her by the prisoner as before stated, for if it resulted from any other cause, and not from the repeated blows so inflicted upon her, and as stated in the evidence, he should be entirely acquitted.
 Verdict of guilty of murder of the second degree.